Appellant was convicted in Birmingham Municipal Court for concealing a felon in violation of City Code § 36-56 as it adopts § 13-9-2, Code of Ala. 1975. On appeal to circuit court, a jury found the appellant guilty of the charge, and he was sentenced to six months' hard labor and fined $750.
On September 23, 1979, Birmingham Police Officer Richard Stone recognized James Harley driving a vehicle on one of the city streets. He had knowledge that there was an outstanding warrant of arrest pending against Harley on a charge of grand larceny from Auburn, Alabama. Stone followed Harley's car to the appellant's apartment. Harley parked the car and went into the apartment. Shortly thereafter Harley came out of the apartment, but then turned around and talked briefly with the appellant on the porch. Harley handed the appellant a large key ring and then entered the apartment again. The appellant then got in Harley's automobile and drove off. In the meantime police back-up units had arrived at the scene, and the apartment was under constant surveillance.
Sometime later the appellant returned to the apartment complex on foot. Officer Stone approached him and informed him that Harley was wanted on a grand larceny warrant from Auburn. Stone requested permission to enter the appellant's apartment to make the arrest, but the appellant refused permission claiming that no one was in the apartment and that he had locked himself out and could not get in the apartment until his wife came home from work and let him in with her key. Two other officers, Sgt. Roy Cisco and Cpt. Jessie Sprayberry, separately talked to the appellant and asked permission to enter his apartment, but received the same reply as given to Stone. Finally the officers contacted the apartment manager who granted them permission to break a window and enter the apartment. They did so, and the appellant asked if he could go in first and help get Harley out. The group entered the apartment and with the aid of the appellant Harley was found hiding under a bed upstairs. Five days later police officers obtained a warrant for the appellant's arrest on the instant charge.
 I
At trial the appellant served as his own counsel. The first issue apparent in the record is whether the appellant intelligently and understandingly waived his constitutional right to assistance of counsel. *Page 38 
The right to counsel attaches in all felony cases, Gideon v.Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and in all misdemeanor cases involving the loss of liberty.Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006,32 L.Ed.2d 530 (1972). However, on misdemeanor charges the right to counsel is limited to cases where a defendant is actually sentenced to jail. Scott v. Illinois, 440 U.S. 367,99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). The Sixth Amendment right to counsel does not depend upon a request by the accused. Kitchensv. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). If an accused waives his right to counsel, that waiver must be intelligently and understandingly made and cannot be presumed from a silent record. Carnley v. Cochran, 369 U.S. 506,82 S.Ct. 884, 8 L.Ed.2d 70 (1962). In Carnley the Supreme Court stated, at 513 and 516, 82 S.Ct. at 889 and 890:
 "But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. . . .
. . . . .
 "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."
See also Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969).
Of course the State cannot force counsel upon a defendant. Every defendant has a right to waive counsel and to conduct his own defense. Faretta v. California, 422 U.S. 806,95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the waiver must be intelligently and understandingly made, and we cannot assume that to be the case from a silent record as in the instant case. Boyd v. Dutton, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755
(1972). The record before us reveals none of the circumstances surrounding the appellant's self-representation. Such a record, pursuant to the above cited cases, will not support the trial court's judgment wherein the appellant was sentenced to a loss of liberty. The judgment of the trial court must, therefore, be reversed on that ground. II
In addition to the jail sentence, the appellant was fined $750. The maximum fine allowed for violation of a municipal ordinance is $500. Section 11-45-9, Code of Ala. 1975.
 III
The elements of the instant offense consist of (1) knowledge of the accessory of the principal's crime, (2) commission of acomplete felony, and (3) active aid (passivity excluded).Rudolph v. State, 40 Ala. App. 398, 114 So.2d 299 (1959). Section 13-9-2, Code of Ala. 1975, which defines the instant offense, concludes by providing that "if the principal felon is dead or has fled from justice, such accessory may be prosecuted and convicted before the principal; but in such case it shallbe necessary to allege in the indictment and to prove on thetrial the fact that the principal felon is dead or has fled."
(Emphasis added.)
Although the appellant was not represented by counsel, he nevertheless attempted to move to exclude the City's evidence at the end of the City's case in chief. At that point, he moved that "the charges be dismissed because the State [City] has failed to prove a case." He argued to the trial judge that the evidence shows that he did not have a key and that he did not physically obstruct the police from going into the house. The trial judge replied:
 "Is it your impression that once you learned there is a felon in there, which you did long before they got in? When they say is it all right with you — you haven't got a key. Could we break a window in your house? You say no. Would you assist us in any manner? This is the testimony of Sprayberry. Whether it's true or not, that's not for me to say. When they say will you let us in or let us break in and you say no, that seems to me *Page 39 
to be saying that you won't help him. That's what this ordinance, or this State Code, is supposed to cover."
The appellant's motion was denied on the erroneous supposition that failing to provide active aid to the officers is a violation of Code § 13-9-2. The testimony of the officers at the scene is in accord that none of them had an arrest warrant for Harley in hand. No one presented the appellant with an arrest warrant or a search warrant. The request that he open his house for a warrantless search or that he allow the officers to break into his home, if he had no key, could be legally refused by the appellant under the circumstances. The only evidence concerning a warrant for the arrest of Harley was that a warrant from Auburn was in the computer at the police department. The appellant was not obliged to open his home or allow a police break-in without being presented a valid warrant for Harley's arrest, or a warrant to search the premises.Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371,63 L.Ed.2d 639 (1980).
The appellant's motion to dismiss the charges for failure of the prosecution to prove a case is adequate to raise the issue of the sufficiency of the evidence on appeal, and the ruling on that motion is tested by the evidence at the time the motion is made. Kent v. State, Ala.Cr.App., 367 So.2d 508, cert. denied, Ala., 367 So.2d 518 (1978).
The City proved the first element of the offense, knowledge of the accessory of the principal's crime. Likewise, there may have been sufficient evidence of active aid on the appellant's part to submit that issue to the jury, even though the trial court considered the appellant's passivity to be sufficient to present to the jury. Whether the appellant's lying to the officers that Harley was not in his apartment is active aid need not be decided here. This is because the City completely failed to prove the second element of the offense, the commission of a complete felony. Duncan v. State, Ala.Cr.App.,338 So.2d 446 (1976).
The only evidence concerning the commission of a felony was that Harley was wanted on a grand larceny warrant out of Auburn, Alabama. In fact, there is positive testimony in the record that Harley had never been tried or convicted for such a felony. This brings us to the requirement in Code § 13-9-2 that "if the principal felon is dead or has fled from justice, such accessory may be prosecuted and convicted before the principal; but in such case it shall be necessary to allege in the indictment and to prove on the trial the fact that the principal felon is dead or has fled."
In Duncan, supra, we stated:
 "Not only is there no evidence of a completed felony on the part of the principal, neither is there any evidence that the principal had been convicted of a felony prior to the instant trial. . . ."
After setting out the pertinent part of § 13-9-2, supra, we found that from the wording of that section, "it appears that the legislature did not intend for accessories after the fact to be tried before the principal except where the principal is dead or has fled from justice. The instant record is completely silent on whether the principal . . . was ever tried and convicted on any charge."
The instant case contains the same fatal defects in this regard as did Duncan, supra. In addition to the defects pointed out in Sections I and II above, we find that the City failed to present sufficient evidence to support the elements of the offense in question. Pursuant to Burks v. United States,437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the reversal of a case on appeal for insufficiency of the evidence bars a new trial. Burks has been applied to the states via Greene v.Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).
REVERSED AND RENDERED.
All the Judges concur.
DeCARLO, J., concurs in result. *Page 292